S. Craig Adams, Idaho State Bar No. 10563
S.C. Adams, Attorney at Law, PLLC
2920 N Arthur Street
Boise, Idaho 83703
Tel.: (303) 862-2863
Email: sc.adams1@gmail.com

Brian Knutsen, Oregon State Bar No. 112266, *pro hac vice* application forthcoming
KAMPMEIER & KNUTSEN, PLLC
1300 SE Stark Street, Suite 202
Portland, Oregon 97214
Tel.: (503) 841-6515
Email: brian@kampmeierknutsen.com

Jessica Durney, Washington State Bar No. 57923, *pro hac vice* application forthcoming
KAMPMEIER & KNUTSEN, PLLC
811 First Avenue, Suite 468
Seattle, Washington 98104
Tel.: (206) 739-5184
Email: jessica@kampmeierknutsen.com

*Attorneys for Plaintiff Snake River Waterkeeper*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SNAKE RIVER WATERKEEPER,<br><br>    Plaintiff,<br><br>v.<br><br>IDAHO POWER COMPANY,<br><br>    Defendants. | Case No. 1:21-cv-00269<br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |

## I.    INTRODUCTION

1.    This action is a citizen suit brought under section 505 of the Clean Water Act ("CWA"), as amended, 33 U.S.C. § 1365. Plaintiff Snake River Waterkeeper seeks declaratory and injunctive relief to compel defendant Idaho Power Company ("Idaho Power") to comply

with section 301(a) of the CWA, 33 U.S.C. § 1311(a), by discontinuing unpermitted discharges of pollutants from the Brownlee Dam and from its associated structures and facilities (the "Dam")[1] located on the Snake River unless and until Idaho Power obtains a National Pollutant Discharge Elimination System ("NPDES") permit authorizing the discharges. Snake River Waterkeeper also seeks the imposition of civil penalties against Idaho Power for its longstanding and ongoing CWA violations and an award of costs, including attorneys' and expert witnesses' fees.

2.      Idaho Power owns and operates the Dam on the Snake River that discharges pollutants, including oils, greases, other lubricants, and cooling water and the heat associated therewith. The discharges addressed by this complaint are not authorized by an NPDES permit and therefore violate section 301(a) of the CWA, 33 U.S.C. § 1311(a).

## II.      JURISDICTION AND VENUE

3.      The Court has subject matter jurisdiction over Snake River Waterkeeper's claim under section 505(a) of the CWA, 33 U.S.C. § 1365(a) (citizen suit) and 28 U.S.C. § 1331 (federal question). Sections 309(d) and 505 of the CWA, 33 U.S.C. §§ 1319(d) and 1365, authorize the relief requested. The relief requested is also proper under 28 U.S.C. § 2201 (declaratory relief) and 28 U.S.C. § 2202 (injunctive relief).

4.      In accordance with section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A), and 40 C.F.R. § 135.2, Snake River Waterkeeper notified Idaho Power of its violations of the CWA and of Snake River Waterkeeper's intent to sue by letters dated and postmarked January 11, 2021 and February 26, 2021 (collectively, the "Notice Letters"). Copies of the Notice Letters

---

[1] The term "Dam," as used herein, includes the Brownlee Dam and all associated structures and facilities, including turbines, powerhouses, transformers, spillways, and cranes.

are attached to this complaint as Exhibits 1 and 2. In accordance with section 505(b)(1)(A) of the

CWA, 33 U.S.C. § 1365(b)(1)(A), and 40 C.F.R. § 135.2(a)(1), Snake River Waterkeeper

provided copies of the Notice Letters to the Administrator of the United States Environmental

Protection Agency ("EPA"), the Regional Administrator of Region 10 of the EPA, the Director

of Idaho Department of Environmental Quality ("IDEQ"), and the registered agency for Idaho

Power by mailing copies to these individuals on the dates the letters were dated—January 11,

2021 and February 26, 2021—via certified mail, return receipt requested.

5.      At the time of the filing of this complaint, more than 60 days have passed since

the Notice Letters and the copies thereof were issued as described in the preceding paragraph.

6.      As of the filing of this complaint, neither EPA nor IDEQ has commenced any

action constituting diligent prosecution to redress the violations addressed herein and in the

February 26, 2021 Notice Letter.

7.      The violations complained of herein and in the February 26, 2021 Notice Letter

are continuing and/or reasonably likely to continue to occur. Idaho Power is in violation of the

CWA.

8.      The source of the violations complained of is located in Washington County,

Idaho, within the Southern Division of the District of Idaho, and venue is therefore appropriate in

the District of Idaho under section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1).

### III.     PARTIES

9.      Plaintiff Snake River Waterkeeper is suing on behalf of itself and its members.

Snake River Waterkeeper is a 501(c)(3) non-profit corporation registered in the State of Idaho.

The mission of Snake River Waterkeeper is to apply science and law to protect, restore, and

sustain waters of the Snake River Basin. The organization's strategy for protecting the Snake

River and its tributaries includes working with and within communities that depend on local waterways and enforcing laws that promote public health and safety while protecting trout, salmon, and other native fish and wildlife.

10.     Snake River Waterkeeper has representational standing to bring this action. Snake River Waterkeeper has members who reside in Idaho, Oregon, and Washington in the vicinity of waters affected by Idaho Power's illegal discharges of pollutants. Members of Snake River Waterkeeper use and enjoy the waters and the surrounding areas that are adversely affected by the Idaho Power's discharges. Snake River Waterkeeper's member use these areas for, inter alia, fishing, rafting, hiking, walking, windsurfing, photographing, boating, and observing wildlife. The environmental, health, aesthetic, and recreational interests of Snake River Waterkeeper's members have been, are being, and will be adversely affected by Idaho Power's illegal discharges of pollutants from the Dam and by the members' reasonable concerns related to the effects of the discharges. The members are further concerned that, because these discharges are not subject to an NPDES permit as required by the CWA, there are not sufficient restrictions imposed on and monitoring and reporting of, the discharges to minimize the adverse water quality impacts of the discharges. These injuries are fairly traceable to the violations and redressable by the Court.

11.     Defendant Idaho Power is a corporation authorized to conduct business under the laws of the State of Idaho. Idaho Power owns and operates the Brownlee Dam, a hydroelectric dam facility located at approximately River Mile 285.0 of the Snake River.

## IV.    LEGAL FRAMEWORK

12.    Section 301(a) of the CWA, 33 U.S.C. § 1311(a), makes unlawful the discharge of any pollutant by any person unless authorized by, inter alia, an NPDES permit issued pursuant to section 402 of the CWA, 33 U.S.C. § 1342.

13.    Section 502(12) of the CWA, 33 U.S.C. § 1362(12), defines "discharge of a pollutant" to include "any addition of any pollutant to navigable waters from any point source."

14.    Section 502(7) of the CWA, 33 U.S.C. § 1362(7), defines the term "navigable waters" as "the waters of the United States including the territorial seas."

15.    Section 502(14) of the CWA, 33 U.S.C. § 1362(14), defines "point source" as "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged."

## V.    FACTUAL BACKGROUND

**The Affected Community & Environment**

16.    The Snake River and its tributaries make up one of the West's most scenic and productive aquatic ecosystems, flowing from the headwaters of Wyoming, across the full breadth of Idaho, and to its mouth near Washington's Tri-cities, where it joins the Columbia River. This river system supports rich fishing traditions, provides water for communities and agriculture, recreation opportunities, and power for hydroelectric dams. The river system is also severely degraded by pollution. Toxic pollution threatens the health of people that eat local fish and jeopardizes the public's right to eat fish caught locally. Rising water temperatures also threaten

the health of salmon and other aquatic life that rely on cool waters for survival. The Columbia

River, to which the Snake River is a tributary, faces the same threats.

17.     Units of the Snake River and Columbia River watersheds have a variety of

designated beneficial uses, including cold water aquatic life, salmon spawning, primary contact

recreation, domestic water supply, and more. *E.g.*, Idaho Admin. Code r. 58.01.02.120, Wash.

Admin. Code § 173-201A-602. Waterbodies downstream of the Brownlee Dam are listed as

impaired and require or have total maximum daily loads ("TMDLs") for temperature and toxic

pollutants, including mercury, PCBs, DDE, dieldrin, dioxins, and toxaphene.[2] Studies have

confirmed the pollution crisis that exists on these critical waterbodies.[3]

18.     Pollution discharges from the Brownlee Dam contribute to the pollution crisis on

the Snake River and Columbia River. According to the National Oceanic & Atmospheric

Administration ("NOAA"):

> Spilled oil can harm living things because its chemical constituents
> are poisonous. This can affect organisms both from internal
> exposure to oil through ingestion or inhalation and from external
> exposure through skin and eye irritation. Oil can also smother some
> small species of fish or invertebrates and coat feathers and fur,
> reducing birds' and mammals' ability to maintain their body
> temperatures.[4]

---

[2] *See* Idaho Dep't of Env't. Quality, Integrated Report, *available at*
https://www.deq.idaho.gov/water-quality/surface-water/monitoring-and-assessment/; Wash.
Dep't of Ecology, Washington State Water Quality Assessment, *available at*
https://ecology.wa.gov/Water-Shorelines/Water-quality/Water-improvement/Assessment-of-
state-waters-303d.

[3] *E.g.*, U.S. Envtl. Prot. Agency, *Columbia River Basin State of River Report for Toxics*
(hereafter State of the River Report) (January 2009),
https://www.epa.gov/columbiariver/columbia-river-basin-state-river-report-toxics-january-2009);
Lower Columbia River Estuary Partnership, *Lower Columbia River and Estuary Ecosystem
Monitoring: Water Quality and Salmon Sampling Report* (2007).

[4] Nat'l Oceanic & Atmospheric Admin., Office of Response and Restoration, *How Oil Harms
Animals and Plants in Marine Environments*, https://response.restoration.noaa.gov/oil-and-
chemical-spills/oil-spills/how-oil-harms-animals-and-plants-marine-environments.html.

COMPLAINT – 6

19.     The impacts of oil pollution are sobering. Yet Idaho Power discharges oil and other pollution from the Dam without the NPDES permit authorization required by the CWA. In turn, Idaho Power fails to monitor and report pollution in a manner that enables the public to fully understand the extent and severity of the problem.

20.     The Dam also discharges heat in the form of cooling water to a river system recognized by EPA as too warm to support designated uses, including salmon habitat. Salmon need cool water to survive. Hot water pollution from point sources, including the Dam, contributes to elevated water temperatures in the Snake and Columbia Rivers. Specifically, Idaho Power uses water to cool a variety of Dam components and materials, including turbines, generators, transformers, and lubricating oils. Idaho Power discharges this cooling water directly to the Snake River, which contributes warm water to a river system that is already too warm to support healthy fish populations.

21.     The vicinity of the Dam that is the subject of this complaint and the Snake and Columbia Rivers and their tributaries are used by the citizens of Idaho, Oregon, and Washington, and visitors, including by Snake River Waterkeeper's members, for recreational activities. Snake River Waterkeeper's members also derive aesthetic, scientific, and spiritual benefits from the receiving waters. Its members' enjoyment of these activities and waters is diminished by the polluted state of the receiving waters, shorelines, air, and the nearby areas, and by the defendant's contribution to such polluted state.

**The Brownlee Dam and Discharges of Pollutants**

22.     Idaho Power Company owns and operates the Brownlee Dam on the Snake River.

23.     The Dam is located within and discharges pollutants to waters within Washington County, Idaho.

24.     EPA issued Idaho Power NPDES Permit No. ID-002090-7 ("1974 Permit") for the Dam on June 28, 1974. At that time, the Dam consisted of a single powerhouse ("Powerhouse 1") with four units and five total outfalls. The 1974 Permit contemplated and authorized discharges from the five outfalls from Powerhouse 1, as well as a sanitary sewage outfall.

25.     Between 1976 and 1980, Idaho Power constructed a second powerhouse ("Powerhouse 2") at the Dam, which contains one unit ("Unit 5"). Powerhouses 1 and 2 each have separate tailrace channels and generators, and the generator for Unit 5 in Powerhouse 2 is larger than the generators for Units 1 through 4 of Powerhouse 1. The construction of Powerhouse 2 created at least two new outfalls.

26.     Idaho Power submitted an application to EPA for a new or amended NPDES permit to authorize discharges from the Unit 5 dated February 15, 1980, and Idaho Power also informed EPA at that time that it would begin testing Unit 5 in March 1980 and operating the new unit shortly thereafter. EPA did not act on Idaho Power's February 15, 1980 application or otherwise authorize discharges from Powerhouse 2 and Unit 5.

27.     In 2018, EPA promulgated a draft NPDES general permit for pollutant discharges from hydroelectric facilities in Idaho. The draft NPDES permit was intended to address the type of discharges associated with the Brownlee Dam and subject to this complaint.

28.     Instead of encouraging EPA's permitting process that would have finally authorized discharges from the Dam's Powerhouse 2 and Unit 5, Idaho Power urged EPA to halt its efforts. Specifically, Idaho Power submitted comments noting that the State of Idaho was seeking NPDES permitting authority and expressing its preference that Idaho be allowed to draft

the permit instead of EPA. Since then, the State of Idaho has taken over permitting authority and

has yet to issue an NPDES permit for the Powerhouse 2 and Unit 5.

29.     Idaho Power constructed Powerhouse 2, including Unit 5, and has continued

discharging pollutants from these structures without ever securing the required NPDES permit.

These discharge violate section 301(a) of the CWA, 33 U.S.C. § 1311(a).

30.     Upon information and belief, Idaho Power discharges oils, greases, lubricants, and

other pollutants associated with Powerhouse 2 and/or Unit 5 collected from various sources

through sumps, including powerhouse drainage sumps, un-watering sumps, spillway sumps,

and/or other systems to the Snake River. These discharges violate section 301(a) of the CWA

and occurred each and every time Idaho Power made these discharges in the past five years and

continue to occur and/or are reasonably likely to recur. These discharges are not authorized by an

NPDES permit.

31.     Upon information and belief, Idaho Power discharges cooling water, and the

associated heat, used to cool components and/or materials associated with Powerhouse 2 and/or

Unit 5 at the Dam, including transformers, lubricating oils, shaft and thrust bearings, turbines,

and/or generators, to the Snake River. These discharges violate section 301(a) of the CWA and

occurred each and every day for the past five years and continue to occur. These discharges are

not authorized by an NPDES permit.

32.     Upon information and belief, Unit 5 at the Dam utilizes Francis turbines, which

discharge grease to the Snake River. Wicket gates control the amount of water flowing through

the turbine at Unit 5. The wicket gate bearings are lubricated with grease or another lubricant.

This grease or lubricant is continuously fed into bearings and discharged directly and/or

indirectly to the Snake River. Idaho Power violates section 301(a) of the CWA by discharging

COMPLAINT – 9

grease or other lubricant used at the wicket gates associated with Powerhouse 2 and/or Unit 5 at the Dam. These violations have occurred each and every day for the past five years and continue to occur. These discharges are not authorized by an NPDES permit.

33.     Upon information and belief, the Dam also discharges oils, greases, lubricants, and other pollutants as a result of machinery, equipment, or structural failures associated with Powerhouse 2 and/or Unit 5 at the Dam. This includes all acute pollution discharges, including but not limited to discharges resulting from spills, leaks, and accidents that occurred at Powerhouse 2 and/or Unit 5, including structures associated therewith, to the Snake River during the last five years. Discharges of this nature at the Dam are continuing to occur and/or are reasonably likely to recur. These discharges are not authorized by an NPDES permit.

34.     The discharges from the Dam described herein are made from pipes and/or other discernible, confined, and/or discrete conveyances.

35.     The discharges addressed herein are made to Waters of the United States. The discharges are made directly to a navigable water body or to a continuously flowing water body that is tributary to a navigable water body.

36.      The Snake River is a navigable water body at the location of the Dam.

37.     The discharges addressed herein are discharges of pollutants to navigable waters from point sources that violate section 301(a) of the CWA, 33 U.S.C. § 1311(a), when made without the authorization of an NPDES permit.

38.     Idaho Power's violations were avoidable had it been diligent in overseeing regulatory compliance.

39.     Idaho Power has benefitted economically as a consequence of its violations and its failure to implement improvements at the Dam.

COMPLAINT – 10

40.     In accordance with section 505(c)(3) of the CWA, 33 U.S.C. § 1365(c)(3), and 40 C.F.R. § 135.4, Snake River Waterkeeper will mail copies of this complaint that are either filed and date-stamped copies or conformed copies to the Administrator of the EPA, the Regional Administrator for Region 10 of the EPA, and the Attorney General of the United States.

## VI.     CAUSE OF ACTION

41.     Snake River Waterkeeper realleges and incorporates by reference each and every allegation set forth in the paragraphs above.

42.     Idaho Power is in violation of section 301(a) of the CWA, 33 U.S.C. § 1311(a), by discharging pollutants associated with Powerhouse 2 and/or Unit 5 at the Dam to navigable waters as described herein and in the February 26, 2021 Notice Letter without an NPDES permit. These violations are violations of an "effluent standard or limitation" as defined by section 505(f) of the CWA, 33 U.S.C. § 1365(f).

43.     Upon information and belief, these violations committed by Idaho Power are continuing and/or reasonably likely to recur. Any and all additional violations of the CWA which occur after those described in the February 26, 2021 Notice Letter but before a final decision in this action should be considered continuing violations subject to this complaint.

## VII.     RELIEF REQUESTED

Wherefore, Snake River Waterkeeper respectfully requests that this Court grant the following relief:

A.     Issue a declaratory judgment that Idaho Power has violated and continues to be in violation of section 301(a) of the CWA, 33 U.S.C. § 1311(a), by discharging pollutants

associated with Powerhouse 2 and/or Unit 5 at the Dam to the Snake River without the authorization of an NPDES permit as described herein;

B.      Issue an injunction enjoining Idaho Power from discharging pollutants associated with Powerhouse 2 and/or Unit 5 at the Dam to the Snake River as described herein until such discharges are authorized by an NPDES permit;

C.      Issue an injunction requiring Idaho Power to take specific actions to evaluate and remediate the environmental harm caused by its violations;

D.      Grant such other preliminary and/or permanent injunctive relief as Snake River Waterkeeper may request during the pendency of this case;

E.      Order Idaho Power to pay civil penalties for each of its CWA violations pursuant to sections 309(d) and 505(a) of the CWA, 33 U.S.C. §§ 1319(d) and 1365(a), and 40 C.F.R. § 19.

F.      Award Snake River Waterkeeper its costs of litigation, including reasonable attorney and expert witness fees, as authorized by section 505(d) of the CWA, 33 U.S.C. § 1365(d), and any other applicable authorization; and

G.      Grant such additional relief as this Court deems appropriate.

RESPECTFULLY SUBMITTED this 24th day of June, 2021.

S.C. ADAMS, ATTORNEY AT LAW, PLLC

By:  s/ S. Craig Adams
S. Craig Adams, Idaho State Bar No. 10563
2920 N Arthur Street
Boise, Idaho 83703
Tel.: (303) 862-2863
Email: sc.adams1@gmail.com

Kᴀᴍᴘᴍᴇɪᴇʀ & Kɴᴜᴛsᴇɴ, PLLC

Brian Knutsen, Oregon State Bar No. 112266, *pro hac vice* application forthcoming
1300 SE Stark Street, Suite 202
Portland, Oregon 97214
Tel.: (503) 841-6515
Email: brian@kampmeierknutsen.com

Jessica Durney, Washington State Bar No. 57923, *pro hac vice* application forthcoming
811 First Avenue, Suite 468
Seattle, Washington 98104
Tel.: (206) 739-5184
Email: jessica@kampmeierknutsen.com

*Attorneys for Plaintiff Snake River Waterkeeper*

# EXHIBIT 1

# KAMPMEIER & KNUTSEN PLLC

## ATTORNEYS AT LAW

BRIAN A. KNUTSEN
Licensed in Oregon & Washington
503.841.6515
brian@kampmeierknutsen.com

January 11, 2021

**Via CERTIFIED MAIL – Return Receipt Requested**

| | |
|---|---|
| Managing Agent | Managing Agent |
| Brownlee Dam | Brownlee Dam |
| Idaho Power Company | Idaho Power Company |
| P.O. Box 70 | 1221 W. Idaho Street |
| Boise, ID 83707 | Boise, ID 83702 |

**Re:** **NOTICE OF INTENT TO SUE IDAHO POWER COMPANY UNDER THE CLEAN WATER ACT**

Dear Managing Agent:

This letter is to provide you with sixty days' notice of Snake River Waterkeeper's ("SRW") intent to file a citizen suit against Idaho Power Company ("Idaho Power") under section 505 of the Clean Water Act ("CWA"), 33 U.S.C. § 1365, for the violations described herein. The CWA prohibits any person from discharging any pollutant to waters of the United States except as authorized by a National Pollutant Discharge Elimination System ("NPDES") permit. Continuing to discharge pollutants without securing an NPDES permit constitutes an ongoing violation of the CWA.

Idaho Power has and continues to violate section 301(a) of the CWA, 33 U.S.C. § 1311(a), by discharging pollutants to waters of the United States and to the State of Idaho from the Brownlee Dam and from its associated structures and facilities (collectively "Dam").[1] Specifically, Idaho Power discharges oils, greases, other lubricants, and cooling water from the Dam without the authorization of an NPDES permit in violation of the CWA.

This notice of intent to sue is part of SRW's effort to protect people who rely on the Snake River and its tributaries throughout the Snake River Basin for uses including drinking water, food, and recreation. SRW's mission is "applying science and law to protect, restore, and sustain waters of the Snake River Basin." The organization's strategy for protecting the Snake River and its tributaries includes working with and within communities that depend on local waterways and enforcing laws that promote public health and safety while protecting trout, salmon, and other native fish and wildlife.

---

[1] The term "Dam," as used herein, includes the Brownlee Dam and all associated structures and facilities, including turbines, powerhouses, transformers, spillways, and cranes. The approximate location of the Dam is identified in Appendix 1.

## I.      Legal Background.

Idaho's rivers, and the use of rivers by people, fish, and wildlife, are protected by both federal and state law. In 1972, Congress passed the CWA to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). The CWA is the cornerstone of surface water quality protection in the United States. In the forty years since its passage, the CWA has dramatically increased the number of waterways that are once again safe for fishing and swimming. Despite the great progress in reducing water pollution, many of the Nation's waters still do not meet the water quality goals. In fact, the vast majority of rivers and streams in Idaho are not assessed for or fail to meet basic state water quality standards for pollutants such as toxics and temperature.[2] These standards are designed to protect designated uses, including aquatic life, fishing, swimming, and drinking water.

The NPDES permitting scheme is the primary means by which discharges of pollutants are controlled. At a minimum, NPDES permits must include technology-based effluent limitations, any more stringent limitations necessary to meet water quality standards, and monitoring and reporting requirements. *See* 33 U.S.C. §§ 1311, 1342, 1318. EPA formerly and now the state of Idaho issue permits for pollution discharges into the rivers and streams of Idaho. These include permits that regulate the discharge of toxic pollution, hot water, bacteria, and other pollutants. According to EPA, improvements to the quality of water in our rivers are directly linked to the implementation of the NPDES program and the associated control of pollutants discharged from both municipal and industrial point sources.[3]

## II.     The Heavy Toll of Pollution on the Snake River and Its Tributaries.

The Snake River and its tributaries make up one of the West's most scenic and productive aquatic ecosystems, flowing from the headwaters of Wyoming, across the full breadth of Idaho, and to its mouth near Washington's Tri-cities where it joins the Columbia River. This river system supports rich fishing traditions, provides water for communities and agriculture, recreation opportunities, and power for hydroelectric dams. The river system is also severely degraded by pollution. Toxic pollution threatens the health of people that eat local fish and jeopardizes the public's right to eat fish caught locally. Rising water temperatures also threaten the health of salmon and other aquatic life that rely on cool water for survival. The Columbia River, to which the Snake River is a tributary, faces these same threats.

Indeed, relevant units of the Snake River and Columbia River watersheds have a variety of designated beneficial uses, including cold water aquatic life, salmon spawning, primary contact recreation, domestic water supply, and more.[4] And unfortunately, waterbodies

---

[2] *See* Idaho Dep't of Envtl. Quality, Integrated Report, *available at* https://www.deq.idaho.gov/water-quality/surface-water/monitoring-assessment/integrated-report.aspx.

[3] U.S. EPA, *Water Permitting 101* at 11, http://www.epa.gov/npdes/pubs/101pape.pdf.

downstream of the Brownlee Dam are listed as impaired and require or have total maximum daily loads ("TMDLs") for temperature and toxic pollutants, including mercury, PCBs, DDE, dieldrin, dioxins, and toxaphene.[5] Studies have confirmed the pollution crisis that exists on these critical waterbodies.[6]

Pollution discharges from Idaho Power's Dam contribute to the pollution crisis on the Snake and Columbia River. According to the National Oceanic & Atmospheric Administration ("NOAA"):

> Spilled oil can harm living things because its chemical constituents are poisonous. This can affect organisms both from internal exposure to oil through ingestion or inhalation and from external exposure through skin and eye irritation. Oil can also smother some small species of fish or invertebrates and coat feathers and fur, reducing birds' and mammals' ability to maintain their body temperatures.[7]

The impacts of oil pollution are sobering. Yet Idaho Power discharges oil and other pollution from the Dam without the NPDES permit authorization required by the CWA. In turn, Idaho Power fails to monitor and report pollution in a manner that enables the public to fully understand the extent and severity of the problem.

The Dam also discharges heat in the form of cooling water to a river system recognized by EPA as too warm to support designated uses, including salmon habitat. Salmon need cool water to survive. Hot water pollution from point sources, including the Dam, contributes to elevated water temperatures in the Snake and Columbia Rivers. Specifically, Idaho Power uses water to cool a variety of Dam components and materials, including turbines, generators, transformers, and lubricating oils. Idaho Power discharges this cooling water directly to the Snake River, which contributes warm water to a river system that is already too warm to support healthy fish populations.

---

[4] *E.g.*, Idaho Admin. Code r. 58.01.02.140; Wash. Admin. Code § 173-201A-602.

[5] Idaho Dep't of Envtl. Quality, Integrated Report, *available at* https://www.deq.idaho.gov/water-quality/surface-water/monitoring-assessment/integrated-report.aspx; Wash. Dep't of Ecology, Washington State Water Quality Assessment, *available at* https://apps.ecology.wa.gov/ApprovedWQA/ApprovedPages/ApprovedSearch.aspx.

[6] *E.g.*, U.S. EPA, *Columbia River Basin State of River Report for Toxics* (hereafter *State of the River Report*) (January 2009), https://www.epa.gov/columbiariver/2009-state-river-report-toxics); Lower Columbia River Estuary Partnership, *Lower Columbia River and Estuary Ecosystem Monitoring: Water Quality and Salmon Sampling Report* (2007).

[7] NOAA, Office of Response and Restoration, *How Oil Effects Fish and Wildlife in Marine Environments,* http://response.restoration.noaa.gov/oil-and-chemical-spills/oil-spills/how-oil-harms-animals-and-plants-marine-environments.html.

### III.    Unpermitted Pollutant Discharges from the Dam.

Section 301(a) of the CWA prohibits discharges of oils, greases, lubricants, cooling water, and other pollutants to the Snake River from the Dam without NPDES permit authorization. 33 U.S.C. § 1311(a). Without an NPDES permit, Idaho Power is failing to monitor, report, and reduce pollution discharges pursuant to the CWA and state and federal implementing rules.

### A.    Chronic Pollutant Discharges from the Dam.

The Dam discharges oils, greases, lubricants, and other pollutants collected from various sources through sumps, including powerhouse drainage sumps, un-watering sumps, spillway sumps, and/or other systems to the Snake River. Idaho Power violates section 301(a) of the CWA by discharging pollutants from these various drainage and/or un-watering sumps and/or other systems at the Dam. These violations occurred each and every time Idaho Power made these discharges in the past five years and continue to occur.[8]

The Dam discharges cooling water, and the associated heat, used to cool components and/or materials at the Dam, including transformers, lubricating oils, shaft and thrust bearings, turbines, and/or generators, to the Snake River. These discharges of cooling water and associated heat violate section 301(a) of the CWA and have occurred each and every day for the past five years.

The Dam utilizes Francis turbines, which discharge grease and/or other pollutants to the Snake River. Wicket gates control the amount of water flowing through the turbines at the Dam. The Wicket gate bearings are lubricated with grease or another lubricant. This grease or lubricant is continuously fed into the bearings and discharged to the Snake River. Idaho Power has violated section 301(a) of the CWA by discharging grease, lubricant, and/or other pollutants from the bearings at the turbine wicket gates at the Dam each and every day for the past five years.

### B.    Acute Pollutant Discharges from the Dams.

Idaho Power violates section 301(a) of the CWA every time it discharges oil, a lubricant, or other pollutants to the Snake River from the Dam, including when such discharges occur as a result of machinery, equipment, or structural failure. This includes all acute pollution discharges, including but not limited to discharges resulting from spills, leaks, and accidents that occurred from the Dam to the Snake River during the last five years.

---

[8] Idaho Power is in the best position to know the specific location of the point sources (i.e., the structures that discharge pollutants from drainage sumps, unwatering sumps, spillway sumps, and/or other systems into the Snake River) at the Dam.

**IV.     Idaho Power's History of Resisting Permit Coverage.**

Idaho Power has been aware, or should have been aware, for many years that its discharges of oils, greases, lubricants, cooling water, and other pollution to waters of the United States from the Brownlee Dam violate the CWA if made without an NPDES permit. Yet, Idaho Power has not made any significant effort to obtain the legally required NPDES permit, and instead sought to delay the permitting efforts by EPA.

The Oregon Department of Environmental Quality has required NPDES permits for Idaho Power's pollution discharges from the Oxbow Dam and the Hells Canyon Dam to Oregon waters since at least 1995. Discharges from those two facilities that, along with the Brownlee Dam, comprise the Hells Canyon Complex, are substantially similar Idaho Power's discharges from the Brownlee Dam to waters in Idaho. Idaho Power therefore should have known since 1995 that discharges from the Brownlee Dam were subject to NPDES permitting requirements.

Columbia Riverkeeper sued the U.S. Army Corps of Engineers in 2013 for discharging pollutants from the eight primary hydroelectric dams on the Columbia and Snake Rivers without NPDES permits. Discharges from those facilities are substantially similar to those associated with the Brownlee Dam. The Corps settled that case in 2014, agreeing to, among other things, obtain NPDES permit coverage for its discharges. Regional and national news outlets, including the New York Times and Washington Post, reported on the settlement. In 2015, the Corps filed NPDES permit applications pursuant to the settlement. Surely Idaho Power was aware of those proceedings, as well as the subsequent enforcement actions brought by Columbia Riverkeeper for unpermitted discharges from other federal and non-federal hydroelectric dams.

In 2018, EPA promulgated a draft NPDES General Permit for pollutant discharges from hydroelectric facilities in Idaho.[9] The draft permit was intended to address the type of discharges associated with the Brownlee Dam and subject to this notice letter.[10] EPA explained:

> Most discharges that affect water quality are ancillary to the direct process of generating electricity at a hydroelectric facility and result mostly from oil spills, equipment leaks, and improper storage. The General Permit is proposing to require development and implementation of a Best Management Practices (BMP) Plan to minimize or eliminate the discharge of oil and grease and an annual self-certification report demonstrating compliance with the BMP Plan.[11]

---

[9] *See* THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, NPDES FACT SHEET: WASTEWATER DISCHARGES FROM HYDROELECTRIC GENERATING FACILITIES GENERAL PERMIT (2018), *available at* https://www.epa.gov/sites/production/files/2018-04/documents/r10-npdes-idaho-hydroelectric-gp-idg360000-fact-sheet-2018.pdf.

[10] *See id.* at 14.

[11] *Id.* at 15.

5

Instead of encouraging EPA's permitting process that would have authorized discharges from the Brownlee Dam, Idaho Power urged EPA to halt its efforts. *See* Appendix 2. Specifically, Idaho Power submitted comments noting that the State of Idaho was seeking NPDES permitting authority and expressing its preference that Idaho be allowed to draft the permit instead of EPA. In doing so, Idaho Power knew that its request would result in, at a minimum, several more years of illegal unpermitted discharges. *See id.* Since then, the State of Idaho has taken over permitting authority and has yet to permit Idaho Power's Dam operations.

In short, Idaho Power has been aware since long before this notice of intent to sue letter that discharges associated with the Dam require an NPDES permit. Yet, based upon the information available to SRW, Idaho Power has neither applied for nor obtained an NPDES permit for discharges of oils, greases, lubricants, cooling water, and other pollution from the Dam, but has instead sought to delay permitting efforts.

## V.      Party Giving Notice of Intent to Sue.

The full name, address, and telephone number of the party giving notice is:

Snake River Waterkeeper
2123 N. 16th Street
Boise, ID 83702
(208) 806-1303

## VI.      Attorneys Representing Snake River Waterkeeper.

The attorneys representing SRW in this matter are:

KAMPMEIER & KNUTSEN, PLLC
Brian A. Knutsen
Emma Bruden
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
Tel.: (503) 841-6515 (Knutsen)
        (503) 719-5641 (Bruden)
Email: brian@kampmeierknutsen.com
        emma@kampmeierknutsen.com

SNAKE RIVER WATERKEEPER
Ferrell S. Ryan, III
2123 N. 16th Street
Boise, Idaho 83702
Tel.: (208) 806-1303
Email: buck@snakeriverwaterkeeper.org

## VII.      Conclusion.

The violations described herein reflect those indicated by the information currently available to SRW. SRW intends to sue for all violations, including those yet to be uncovered and those committed after the date of this notice of intent to sue.

Under sections 309(d) and 505(a) of the CWA, 33 U.S.C §§ 1319(d), 1365(a), Idaho Power is subject to a separate daily penalty assessment for each CWA violation. The maximum daily penalty assessment for each CWA violation is currently set at $56,460. 33 U.S.C. § 1319(d); 40 C.F.R. § 19.4; 85 Fed. Reg. 83,818, 83,820 (Dec. 23, 2020). In addition to civil penalties, SWR will seek injunctive relief to prevent further violations of the CWA. SRW will further seek to recover its litigation expenses, including expert and attorneys fees, as authorized by section 505(d) of the CWA, 33 USC § 1365(d), or as otherwise authorized by law.

SRW believes that this notice of intent to sue sufficiently states grounds for filing suit. SRW intends to file a citizen suit against Idaho Power Company under section 505(a) of the CWA, 33 U.S.C. § 1365(a), for the violations described herein at the expiration of the sixty-day notice period or shortly thereafter.

SRW is willing to discuss effective remedies for the violations addressed in this notice of intent to sue letter and appropriate settlement terms. Please direct all correspondence to Brian A. Knutsen at (503) 841-6515 or brian@kampmeierknutsen.com.

Very truly yours,

KAMPMEIER & KNUTSEN, PLLC

By: _____

Brian A. Knutsen

7

## CERTIFICATE OF SERVICE

I, Brian A. Knutsen, declare under penalty of perjury of the laws of the United States that I am counsel for Snake River Waterkeeper and that on January 11, 2021, I caused copies of the foregoing Notice of Intent to Sue the Idaho Power Company under the Clean Water Act to be served on the following by depositing them with the United States Postal Service, certified mail, return receipt requested, postage prepaid:

Managing Agent
Brownlee Dam
Idaho Power Company
P.O. Box 70
Boise, ID 83707

Managing Agent
Brownlee Dam
Idaho Power Company
1221 W. Idaho Street
Boise, ID 83702

Administrator Andrew Wheeler
U.S. Environmental Protection Agency
William Jefferson Clinton Building
1200 Pennsylvania Avenue, NW
Washington, D.C. 20460

Director Jess Byrne
Idaho Department of Environmental Quality
1410 N. Hilton Street
Boise, ID 83706

Registered Agent
Patrick A. Harrington
1221 W. Idaho Street
Boise, ID 83702

Regional Administrator Chris Hladick
U.S. Environmental Protection Agency, Region 10
1200 Sixth Avenue
Seattle, WA 98101

Brian A. Knutsen

8

# APPENDIX 1

Brownlee Dam: Cambridge, Idaho 83610
Approximate Coordinates: 44.836°N, 116.9°W


Map:



# APPENDIX 2



July 11, 2018

Comments of the Idaho Power Company on Idaho DEQ's §401 Certification of EPA Region 10's Proposed Hydropower General Permit

**Sent Via Email to: Barry.Burnell@deq.idaho.gov**
Barry Burnell
Water Quality Division Administrator
Idaho Department of Environmental Quality
1410 N. Hilton
Boise, ID 83706

Dear Mr. Burnell:

Idaho Power Company (IPC) appreciates the opportunity to provide comments on the Idaho § 401 Water Quality Certification issued for the EPA Region 10 General Permit for Hydroelectric Facilities in Idaho. IPC submits the following comments for your consideration.

IPC believes that Idaho Department of Environmental Quality (IDEQ), and not EPA, should be the agency responsible for drafting a general permit for hydroelectric facilities located in Idaho. As you are well aware, on July 1, 2018, Idaho achieved primacy concerning IPDES rules governing individual permits. By the year 2020 Idaho DEQ will begin implementation of general permits in Idaho. During its development of the rules governing the IPDES, IDEQ worked closely in a rulemaking with EPA and potentially affected stakeholders to develop the same. It is anticipated that IDEQ would undertake the same collaborative process in order to develop and implement such a permit. Conversely, EPA Region 10 has developed its Hydropower General Permit without soliciting information before submitting it to potentially affected stakeholders for comment. Idaho Power, in comments submitted today, urges EPA Region 10 to halt its efforts to implement the Region 10 Hydropower General Permit, and allow the state of Idaho, once it has primacy concerning general permits, to develop its own hydropower general permit through collaborative rulemaking should the state believe that such a permit is appropriate.

However, in the event that EPA Region 10 proceeds with the Hydropower General Permit, IPC requests some clarification in IDEQ's § 401 certification. On page 1, the Water Quality Certification indicates that EPA does not intend to cover facilities that have a cumulative CWIS with design intake flow of greater than 2 mgd **and** that uses 25 percent or more of the water the facility withdraws for cooling purposes on an average monthly basis. Later, page 6 indicates that facilities that use or propose to use one or more CWIS with a cumulative design intake flow of greater than 2 MGD **or** that uses 25% or more of withdrawn water for cooling must obtain an

BRETT DUMAS                           208-388-2330
Director                              208-433-2837 FAX
Environmental Affairs                 BDumas@idahopower.com
{00237942.DOCX; 1}

P.O. Box 70 (83707)
1221 W. Idaho St.
Boise, ID 83702

individual NPDES permit and will require individual 401 certifications.  Will permits for facilities that meet both or one of the criteria require individual certifications?

Thank you for the opportunity to comment. If there are any questions or need for clarification on any of the, please contact the undersigned. Idaho Power would appreciate any additional opportunity to work through items raised with IDEQ and Region 10.

Sincerely,

Brett Dumas
cc:  Dru Keenan, EPA

# EXHIBIT 2

# KAMPMEIER & KNUTSEN PLLC

## ATTORNEYS AT LAW

BRIAN A. KNUTSEN
Licensed in Oregon & Washington
503.841.6515
brian@kampmeierknutsen.com

February 26, 2021

**Via CERTIFIED MAIL – Return Receipt Requested**

Managing Agent                               Managing Agent
Brownlee Dam                                 Brownlee Dam
Idaho Power Company                          Idaho Power Company
P.O. Box 70                                  1221 W. Idaho Street
Boise, ID 83707                              Boise, ID 83702

**Re:    SUPPLEMENTAL NOTICE OF INTENT TO SUE IDAHO POWER COMPANY
        UNDER THE CLEAN WATER ACT**

Dear Managing Agent:

Snake River Waterkeeper ("SRW") provided notice in a letter dated January 11, 2021, of
its intent to file a citizen suit against Idaho Power Company ("Idaho Power") under section 505
of the Clean Water Act ("CWA"), 33 U.S.C. § 1365. This letter supplements that prior notice.

As described in the January 11 letter, section 301(a) of the CWA prohibits discharges of
pollutants to waters of the United States that are made without a National Pollutant Discharge
Elimination System ("NPDES") permit. 33 U.S.C. § 1311(a). The letter asserted that Idaho
Power has and continues to violate section 301(a) of the CWA, 33 U.S.C. § 1311(a), by
discharging pollutants from the Brownlee Dam and from its associated structures and facilities
(collectively "Dam").[1] Specifically, Idaho Power discharges oils, greases, other lubricants, and
cooling water from the Dam.

Following the January 11 letter, Idaho Power contacted SRW to assert that discharges
from the Dam are authorized by an NPDES Permit issued by the United States Environmental
Protection Agency ("EPA") in 1974. SRW has carefully considered this issue and determined
that Idaho Power is discharging pollutants to waters of the United States from the Dam without
an NPDES permit in violation of section 301(a) of the CWA, 33 U.S.C. § 1311(a).

EPA issued Idaho Power NPDES Permit No. ID-002090-7 ("Permit") for the Dam on
June 28, 1974. At that time, the Dam consisted of a single powerhouse ("Powerhouse 1") with

---

[1] The term "Dam," as used herein, includes the Brownlee Dam and all associated structures and
facilities, including turbines, powerhouses, transformers, spillways, and cranes. The approximate
location of the Dam is identified in Appendix 1 to the January 11, 2021 notice letter.

four units and five total outfalls. The Permit only contemplated and covered discharges from the five outfalls from Powerhouse 1, as well as a sanitary sewage outfall. It is unclear from records available to SRW whether the Permit for Powerhouse 1 remains valid and in effect today.

Between 1976 and 1980, a second powerhouse ("Powerhouse 2"), which contains one unit ("Unit 5"), was constructed. Powerhouses 1 and 2 each have separate tailrace channels and generators, and the generator for Unit 5 in Powerhouse 2 is larger than the generators for Units 1 through 4 of Powerhouse 1. The addition of Powerhouse 2 created at least two additional outfalls. Idaho Power constructed Powerhouse 2 and Unit 5 and has continued discharging pollutants from these structures without ever securing the required NPDES Permit. Therefore, regardless of whether the 1974 Permit remains in effect, Idaho Power is in violation of section 301(a) of the CWA, 33 U.S.C. § 1311(a), by discharging pollutants associated with Powerhouse 2 and/or Unit 5. Those unpermitted discharges are described in the January 11 letter and summarized again here.

The Dam discharges oils, greases, lubricants, and other pollutants associated with Powerhouse 2 and/or Unit 5 collected from various sources through sumps, including powerhouse drainage sumps, un-watering sumps, spillway sumps, and/or other systems to the Snake River. These discharges violate section 301(a) of the CWA and occurred each and every time Idaho Power made these discharges in the past five years and continue to occur.[2]

The Dam discharges cooling water, and the associated heat, used to cool components and/or materials associated with Powerhouse 2 and/or Unit 5 at the Dam, including transformers, lubricating oils, shaft and thrust bearings, turbines, and/or generators, to the Snake River. These discharges violate section 301(a) of the CWA and occurred each and every day for the past five years and continue to occur.

The Dam, including Unit 5, utilizes Francis turbines, which discharge grease and/or other pollutants to the Snake River. Wicket gates control the amount of water flowing through the turbines at the Dam. The wicket gate bearings are lubricated with grease or another lubricant. This grease or lubricant is continuously fed into the bearings and discharged to the Snake River. Idaho Power violates section 301(a) of the CWA by discharging grease or other lubricant used at the wicket gates associated with Powerhouse 2 and/or Unit 5 at the Dam. These violations have occurred each and every day for the past five years and continue to occur.

Idaho Power violates section 301(a) of the CWA every time it discharges oil, a lubricant, or other pollutants as a result of machinery, equipment, or structural failure associated with Powerhouse 2 and/or Unit 5 at the Dam. These violations include all such failures that have occurred during the last five years.

---

[2] Idaho Power is in the best position to know the specific location of the point sources (i.e., the structures and/or outfalls that discharge pollutants from drainage sumps, unwatering sumps, spillway sumps, and/or other systems into the Snake River) at the Dam.

To the extent the 1974 Permit is no longer effective, all discharges of pollutants from the Dam violate section 301(a) of the CWA, 33 U.S.C. § 1311(a), as described in the January 11, 2021 notice of intent to sue letter.

The full name, address, and telephone number of the party giving notice is:

Snake River Waterkeeper
2123 N. 16th Street
Boise, ID 83702
(208) 806-1303

The attorneys representing SRW in this matter are:

KAMPMEIER & KNUTSEN, PLLC
Brian A. Knutsen
Emma Bruden
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
Tel.: (503) 841-6515 (Knutsen)
        (503) 719-5641 (Bruden)
Email: brian@kampmeierknutsen.com
        emma@kampmeierknutsen.com

SNAKE RIVER WATERKEEPER
Ferrell S. Ryan, III
2123 N. 16th Street
Boise, Idaho 83702
Tel.: (208) 806-1303
Email: buck@snakeriverwaterkeeper.org

The violations described in the January 11 letter as supplemented herein reflect those indicated by the information currently available to SRW. SRW intends to sue for all violations, including those yet to be uncovered and those committed after the date of this supplemental notice of intent to sue.

Under sections 309(d) and 505(a) of the CWA, 33 U.S.C §§ 1319(d), 1365(a), Idaho Power is subject to a separate daily penalty assessment for each CWA violation. The maximum daily penalty assessment for each CWA violation is currently set at $56,460. 33 U.S.C. § 1319(d); 40 C.F.R. § 19.4; 85 Fed. Reg. 83,818, 83,820 (Dec. 23, 2020). In addition to civil penalties, SRW will seek injunctive relief to prevent further violations of the CWA. SRW will further seek to recover its litigation expenses, including expert and attorneys' fees, as authorized by section 505(d) of the CWA, 33 USC § 1365(d), or as otherwise authorized by law.

SRW believes that the January 11 notice letter as supplemented herein sufficiently states grounds for filing suit. SRW intends to file a citizen suit against Idaho Power Company under section 505(a) of the CWA, 33 U.S.C. § 1365(a), for the violations described in the January 11 letter as supplemented herein at the expiration of the sixty-day notice period or shortly thereafter.

SRW is willing to discuss effective remedies for the violations addressed in this supplemental notice of intent to sue letter and appropriate settlement terms. Please direct all correspondence to Brian A. Knutsen at (503) 841-6515 or brian@kampmeierknutsen.com.

3

Very truly yours,

KAMPMEIER & KNUTSEN, PLLC

By: _____
Brian A. Knutsen

## CERTIFICATE OF SERVICE

I, Brian A. Knutsen, declare under penalty of perjury of the laws of the United States that

I am counsel for Snake River Waterkeeper and that on February 26, 2021, I caused copies of the

foregoing Supplemental Notice of Intent to Sue the Idaho Power Company under the Clean

Water Act to be served on the following by depositing them with the United States Postal

Service, certified mail, return receipt requested, postage prepaid:


Managing Agent
Brownlee Dam
Idaho Power Company
P.O. Box 70
Boise, ID 83707

Managing Agent
Brownlee Dam
Idaho Power Company
1221 W. Idaho Street
Boise, ID 83702

Acting Administrator Jane Nishida
U.S. Environmental Protection Agency
William Jefferson Clinton Building
1200 Pennsylvania Avenue, NW
Mail Code 1101A
Washington, D.C. 20460

Director Jess Byrne
Idaho Department of Environmental Quality
1410 N. Hilton Street
Boise, ID 83706

Registered Agent
Patrick A. Harrington
1221 W. Idaho Street
Boise, ID 83702

Acting Regional Administrator Michelle Pirzadeh
U.S. Environmental Protection Agency, Region 10
1200 Sixth Avenue
Seattle, WA 98101


Brian A. Knutsen